**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Tiara Avaness (SBN 343928)
*tavaness@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA RYAN and ROSALIA GARCIA, on behalf of themselves and all others who are similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TICKETMASTER, LLC., and LIVE NATION ENTERTAINMENT, INC.<br><br>Defendants. | Case No. 2:24-cv-4482<br><br>**CLASS ACTION COMPLAINT**<br><br>1. NEGLIGENCE<br><br>2. NEGLIGENCE PER SE<br><br>3. BREACH OF FIDUCIARY DUTY<br><br>4. UNJUST ENRICHMENT<br><br>5. BREACH OF IMPLIED CONTRACT<br><br>6. VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT OF 2018 Cal. Civ. Code §§ 1798.100 *et seq.* ("CCPA")<br><br>7. VIOLATION OF THE CALIFORNIA CONSUMER |

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050   F: (213) 788-4070 | clarksonlawfirm.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEGAL REMEDIES ACT Cal.
Civ. Code §§ 1750 *et seq.*
("CLRA")

8. VIOLATION OF THE
   CALIFORNIA UNFAIR
   COMPETITION LAW Cal.
   Bus. and Prof. Code §§ 17200,
   *et seq.* ("UCL")

**DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

## CLASS ACTION COMPLAINT

Plaintiffs Cynthia Ryan and Rosalia Garcia (collectively, "**Plaintiffs**") individually and on behalf of all others similarly situated, bring this Class Action Complaint (the "**Complaint**"), and allege the following against Defendants Ticketmaster, LLC ("**Ticketmaster**") and Live Nation Entertainment, Inc. ("**Live Nation**") (collectively, "**Defendants**"), based upon personal knowledge with respect to themselves and upon information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1.   Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard Plaintiffs' and other similar situated individuals' personal identifiable information ("**PII**"), including but not limited to "full names, addresses, email addresses, phone numbers, ticket sales and event details, order information, and partial payment card data. [The] compromised payment data includes customer names, the last four digits of card numbers, expiration dates, and even customer fraud details" (collectively, "**Private Information**").[1]

2.   This class action arises out of the recent targeted cyberattack against Ticketmaster that enabled a third party to access Defendants' computer systems and data, resulting in the compromise of highly sensitive Private Information (the "**Data Breach**").[2]

3.   Due to the Data Breach, Plaintiffs and Class Members suffered ascertainable losses in the form of the benefit of their bargain, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack, emotional

---

[1] Waqas, *Hackers Claim Ticketmaster Data Breach: 560M Users' Info for Sale at $500k,* HACKREAD (May 29, 2024), https://hackread.com/hackers-ticketmaster-data-breach-560m-users-sale/.

[2] *Id.*

distress, and the imminent risk of future harm caused by the compromise of their Private Information.

4.     The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect consumers' Private Information.

5.     On or around May 28, 2024, the Private Information of 560,000,000 Ticketmaster customers was compromised and listed for sale.[3] The notorious hacker group known only by its alias "ShinyHunters" claimed that it had stolen 1.3 terabytes of personal data and is reportedly ready to sell, or has already sold, such information to nefarious dark web users for $500,000, as illustrated by their post on BreachForums, a dark-web marketplace for stolen data:



6.     This Data Breach occurred because Ticketmaster enabled an unauthorized third party to gain access to and obtain former and current Ticketmaster customers' Private Information from Ticketmaster's internal computer systems.[4]

7.     As of May 29, 2024, Defendants have not released a statement nor notified its customers that their Private Information has been compromised and is likely in the

---

[3] Georgie Hewson, *Home Affairs Department confirms cyber incident impacting Ticketmaster customers*, ABC News (May 29, 2024), https://www.abc.net.au/news/2024-05-29/ticketmaster-hack-allegedlyshinyhunter-customers-data-leaked/103908614.
[4] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

hands of threat actors. Ticketmaster consumers are in the dark, unaware that their Private Information may be used to effectuate identity theft, phishing scams, plunging credit scores and related cybercrimes.

8.    The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols, consistent with the industry standard, necessary to protect Private Information from the foreseeable threat of a cyberattack.

9.    By acquiring Plaintiffs' and class members' Private Information for their own pecuniary benefit, Defendants assumed a duty to Plaintiffs and Class Members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard Plaintiffs' and Class Members' Private Information against unauthorized access and disclosure.

10.    Defendants also had a duty to adequately safeguard this Private Information under controlling case law, as well as pursuant to industry standards and duties imposed by statutes, including Section 5 of the Federal Trade Commission Act (the "**FTC Act**").

11.    Defendants breached those duties and disregarded the rights of Plaintiffs and the Class Members by intentionally, willfully, recklessly, or negligently failing to implement proper and reasonable measures to safeguard consumers' Private Information; failing to take available and necessary steps to prevent unauthorized disclosure of data; and failing to follow applicable, required, and proper protocols, policies, and procedures regarding the encryption of data.

12.    As a result of Defendants' inadequate security and breach of their duties and obligations, the Private Information of Plaintiffs and Class Members was compromised through disclosure to an unauthorized criminal third party. Plaintiffs and Class Members have suffered injuries as a direct and proximate result of Defendants' conduct. These injuries include: (i) diminution in value and/or lost value of Private Information, a form of property that Defendants obtained from Plaintiffs and Class Members; (ii) out-of-

CLASS ACTION COMPLAINT

pocket expenses associated with preventing, detecting, and remediating identity theft, social engineering, and other unauthorized use of their Private Information; (iii) opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) the continued, long term, and certain increased risk that unauthorized persons will access and abuse Plaintiffs' and Class Members' Private Information; (v) the continued and certain increased risk that the Private Information that remains in Defendants' possession is subject to further unauthorized disclosure for so long as Defendants fail to undertake proper measures to protect the Private Information; (v) invasion of privacy and increased risk of fraud and identity theft; and (vi) theft of their Private Information and the resulting loss of privacy rights in that information. This action seeks to remedy these failings and their consequences. Plaintiffs and Class Members have a continuing interest in ensuring that their Private Information is and remains safe, and they should be entitled to injunctive and other equitable relief.

13. Despite having been accessed and exfiltrated by unauthorized criminal actors, Plaintiffs' and Class Members' sensitive and confidential Private Information remains in the possession of Defendants. Absent additional safeguards and independent review and oversight, the information remains vulnerable to further cyberattacks and theft. The aggregate data compromised in the Data Breach, taken as a whole, including but not limited to: full names, addresses, email addresses, phone numbers, ticket sales and event details, order information, and partial payment card data including customer names, the last four digits of card numbers, expiration dates, and customer fraud details, increases the risk of harm, making identity theft a likely outcome.

14. Defendants disregarded the rights of Plaintiffs and Class Members by, *inter alia*, failing to take adequate and reasonable measures to ensure their data systems were protected against unauthorized intrusions; failing to disclose that they did not have adequately robust computer systems and security practices to safeguard Private

Information; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to properly train its staff and employees on proper security measures.

15.    In addition, Defendants failed to properly monitor the computer network and systems that housed the Private Information. Had Defendants properly monitored these electronic systems, Defendants would have discovered the intrusion sooner or prevented it altogether.

16.    The security of Plaintiffs' and Class Members' identities is now at substantial risk because of Defendants' wrongful conduct as the Private Information that Defendants collected and maintained are now in the hands of data thieves. This present risk will continue for the course of their lives.

17.    Armed with the Private Information accessed in the Data Breach, data thieves can commit a wide range of crimes.

18.    As a result of the Data Breach, Plaintiffs and Class Members have been exposed to a present and imminent risk of fraud and identity theft. Among other measures, Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft. Further, Plaintiffs and Class Members will incur out-of-pocket costs to purchase adequate credit monitoring and identity theft protection and insurance services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

19.    Plaintiffs and Class Members will also be forced to expend additional time to review credit reports and monitor their financial accounts for fraud or identity theft. And because they exposed other immutable personal details, the risk of identity theft and fraud will persist throughout their lives.

20.    Plaintiffs bring this lawsuit on behalf of themselves and all those similarly situated to address Defendants' inadequate safeguarding of Class Members' Private Information that they collected and maintained.

CLASS ACTION COMPLAINT

21.     Plaintiffs, on behalf of themselves and all other Class Members, bring claims for negligence, negligence per se, breach of implied contract, breach of fiduciary duty, unjust enrichment, and for declaratory and injunctive relief. To remedy these violations of law, Plaintiffs and Class Members thus seek actual damages, statutory damages, restitution, and injunctive and declaratory relief (including significant improvements to Defendants' data security protocols and employee training practices), reasonable attorneys' fees, costs, and expenses incurred in bringing this action, and all other remedies this Court deems just and proper.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because: (i) the amount in controversy exceeds $5 million, exclusive of interest and costs; (ii) the number of class members exceeds 100 and (iii) minimal diversity exists because many class members, have different citizenship from Defendants.

23.     This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the laws, rights, and benefits of the State of California. Defendants are headquartered in California and have engaged in activities including (i) directly and/or through its parent companies, affiliates and/or agents providing services throughout the United States in this judicial district; (ii) conducting substantial business in this forum; and/or (iii) engaging in other persistent courses of conduct and/or deriving substantial revenue from services provided in California and in this judicial District.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendants are based in this District, maintain Plaintiffs' and Class Members' Private Information in this District, and has caused harm to Plaintiffs and Class Members in this District.

CLASS ACTION COMPLAINT

**PARTIES**

***Plaintiff Cynthia Ryan***

25.    Plaintiff Cynthia Ryan is a citizen of the State of California. At all relevant times, Plaintiff has resided in the county of Los Angeles, California.

26.    Since at least 2012, Plaintiff Ryan has been Defendants' customer and Ticketmaster account holder. Plaintiff provided her Private Information to Defendants, including her credit card. In receiving and maintaining her Private Information for its business purposes, Defendants expressly and impliedly promised, and undertook a duty, to act reasonably in its handling of Plaintiff Ryan's Private Information. Defendants, however, did not take proper care of Plaintiff Ryan's Private Information, leading to its exposure to and exfiltration by cybercriminals as a direct result of Defendants' inadequate cybersecurity measures.

27.    Plaintiff Ryan is deeply concerned by the Data Breach because she and her family frequently use Ticketmaster to purchase concert tickets. Plaintiff Ryan continues to worry about her Private Information, as it is readily available for cybercriminals to sell, buy, and exchange, on the Dark Web.

28.    Since learning about the Data Breach, Plaintiff anticipates needing to spend substantial time to determine the extent and gravity of the Data Breach and to mitigate damages. Plaintiff will need to review for fraudulent activity and closely monitor her financial information.

29.    Plaintiff Ryan suffers a substantially increased risk of fraud, identity theft, and data misuse resulting from her Private Information being leaked on to the Dark Web and subjected to unauthorized third parties/criminals.

30.    Plaintiff Ryan has a continuing interest in ensuring that her Private Information, which remains in Defendants' possession, is protected and safeguarded from future breaches.

CLASS ACTION COMPLAINT

### ***Plaintiff Rosalia Garcia***

31.    Plaintiff Rosalia Garcia is a citizen of the State of California. At all relevant times, Plaintiff Garcia has resided in the county of Los Angeles, California.

32.    Since at least 2019, Plaintiff Garcia has been Defendants' customer and Ticketmaster account holder. Plaintiff provided her Private Information to Defendants. In receiving and maintaining her Private Information for its business purposes, Defendants expressly and impliedly promised, and undertook a duty, to act reasonably in its handling of Plaintiff Garcia's Private Information. Defendants, however, did not take proper care of Plaintiff Garcia's Private Information, leading to its exposure to and exfiltration by cybercriminals as a direct result of Defendants' inadequate cybersecurity measures.

33.    Plaintiff Garcia is deeply concerned by the Data Breach because she frequently uses Ticketmaster to purchase tickets. Plaintiff Garcia continues to worry about her Private Information, as it is readily available for cybercriminals to sell, buy, and exchange, on the Dark Web.

34.    Since learning about the Data Breach, Plaintiff anticipates needing to spend substantial time to determine the extent and gravity of the Data Breach and to mitigate damages. Plaintiff will need to review for fraudulent activity and closely monitor her financial information.

35.    Plaintiff Garcia suffers a substantially increased risk of fraud, identity theft, and data misuse resulting from her Private Information being leaked onto the Dark Web and subjected to unauthorized third parties/criminals.

36.    Plaintiff Garcia has a continuing interest in ensuring that her Private Information, which remains in Defendants' possession, is protected and safeguarded from future breaches.

***Defendant Ticketmaster, LLC.***

37.  Defendant Ticketmaster, LLC. is a wholly owned subsidiary of Defendant Live Nation Entertainment, Inc. headquartered in California with its principal executive office located at 9348 Civic Center Drive, Beverly Hills, CA 90210.

38.  Ticketmaster and Live Nation Entertainment completed their merger on January 25, 2010.[5]

39.  Ticketmaster "operates as a ticket distribution company. [Ticketmaster] buys, transfers, and sells tickets for live music, sporting, arts, theater, and family events. Ticketmaster serves clients worldwide."[6]

40.  Plaintiffs and Class Members are current and former customers of Ticketmaster and account holders on Ticketmaster.com.

41.  Due to the nature of the services Ticketmaster provides, it receives and is entrusted with securely storing consumers' Private Information, which includes, inter alia, individuals' full name, payment information, occasional location data, and other sensitive information. Ticketmaster promised to provide confidentiality and adequate security for the data it collected from customers through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

***Defendant Live Nation Entertainment, Inc.***

42.  Defendant Live Nation Entertainment, Inc. is a Delaware corporation headquartered in California with its principal executive office located at 9348 Civic Center Drive, Beverly Hills, CA 90210.

---

[5] *Live Nation and Ticketmaster Entertainment Complete Merger*, SECURITIES AND EXCHANGE COMMISSION (Jan. 25, 2010), https://www.sec.gov/Archives/edgar/data/1335258/000119312510012287/dex991.htm.
[6] *Ticketmaster LLC*, BLOOMBERG, https://www.bloomberg.com/profile/company/0009574D:US (last visited May 29, 2024).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

43.    Live Nation Entertainment is a publicly traded corporation listed on the New York Stock Exchange with revenues totaling approximately $3.8 billion for the three months ended on March 31, 2024.[7]

44.    Live Nation is "the largest live entertainment company in the world, connecting over 765 million fans across all of our concerts and ticketing platforms in 49 countries during 2023."[8]

45.    Due to the nature of the services Live Nation provides, it receives and is entrusted with securely storing consumers' Private Information, which includes, inter alia, individuals' full name, payment information, occasional location data, and other sensitive information. Live Nation promised to provide confidentiality and adequate security for the data it collected from customers through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

## FACTUAL ALLEGATIONS

### A.    The Data Breach, and Defendants Unsecure Data Management.

46.    On May 28, 2024, threat actors posted that 1.4 terabytes of Private Information were available for purchase on the hacking website Breach Forums.[9] The notorious hacking group ShinyHunters offered the trove of Plaintiffs' and Class Members' Private Information for $500,000.

---

[7] *Form 10-Q Quarterly Report for Live Nation Entertainment, Inc*., BAMSEC, https://www.bamsec.com/filing/133525824000071?cik=1335258 (last visited May 29, 2024).

[8] *Form 10-K Annual Report for Live Nation Entertainment, Inc*., BAMSEC, https://www.bamsec.com/filing/133525824000017?cik=1335258 (last visited May 29, 2024).

[9] Waqas, *supra* note 1.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

47.   Defendants are yet to make a statement or inform consumers that their data is available on the dark web. Such data includes, according to the hackers' forum post, "560 million customers [*sic*] full details (name, address, email, phone) – Ticket sales, event information, order details – CC [credit card] detail [*sic*] – customer, last 4 of card, expiration date. Customer fraud details – much more."[10]

48.   Prior to the Data Breach in May 2024, Plaintiffs and Class Members had provided their Private Information to Ticketmaster with the reasonable expectation and mutual understanding that Ticketmaster would comply with its obligations to keep such information confidential and secure from unauthorized access. In particular, Plaintiffs and Class Members provided their names, emails, phone numbers, location data and credit card information to Ticketmaster in order to register for an account and purchase event tickets on Ticketmaster.com.

49.   PII is a valuable property right.[11] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[12] It is estimated that American companies have spent over $19 billion on acquiring personal data of consumers in 2018.[13] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

---

[10] *Id.*

[11] *See* Marc van Lieshout, *The Value of Personal Data*, 457 IFIP Advances in Information and Communication Technology 26-38 (May 2015), https://www.researchgate.net/publication/283668023_ The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible...").

[12] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD No. 220 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[13] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, Interactive Advertising Bureau (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

Indeed, the threat actor who compromised Defendants' systems is seeking a one-time payment of half a million dollars in exchange for this Private Information.

50.   Plaintiffs and the Class's Private Information exposed in the Data Breach has been exposed on the Dark Web.

51.   Ticketmaster promised consumers it would keep their data secure and private. Data security is purportedly a critical component of Ticketmaster's business model. On a section of its website, Ticketmaster confidently asserts the following statements:

> "We're always taking steps to make sure your information is protected and deleted securely," "[we] have security measure in place to protect your information,"[14] and "[the] security of our fans' information is a priority for us. We take all necessary security measures to protect personal information that's shared and stored with us."[15]

52.   On its website, Ticketmaster maintains an "Our Commitments" section, including "Security & Confidentiality" as one of "10 commitments that drive [Ticketmaster's] privacy program, globally".[16]

53.   Contrary to Ticketmaster's various express assurances that it would take reasonable measures to safeguard the sensitive information entrusted to it, an "unauthorized" person or persons was able to access its network servers.

54.   To date, Ticketmaster has not disclosed complete specifics of the attack, such as whether ransomware has been used.

55.   As such, Ticketmaster, and its parent company Live Nation, have failed to secure the PII of the individuals that provided their sensitive information. Defendants

---

[14] *Privacy Policy*, TICKETMASTER, https://privacy.ticketmaster.com/privacy-policy (last visited May 29, 2024).
[15] *Our Commitments*, TICKETMASTER, https://privacy.ticketmaster.com/en/our-commitments (last visited May 29, 2024).
[16] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

failed to take appropriate steps to protect the PII of Plaintiffs and other Class Members from being disclosed.

**B.    Defendants Failed to Comply with FTC Guidelines**

56.    Defendants were prohibited by the Federal Trade Commission Act (the "**FTC Act**") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "**FTC**") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, FTC v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015).

57.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

58.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[17] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[18]

_____

[17] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

[18] *Id.*

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

59.   The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

60.   The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("**FTCA**"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

61.   These FTC enforcement actions include actions against healthcare providers and partners like Defendants. *See, e.g*., In the Matter of Labmd, Inc., A Corp, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.")

62.   Defendants failed to properly implement basic data security practices, allowing for this attack to occur, victimizing millions of people.

63.   Defendants' failure to employ reasonable and appropriate measures to protect against

unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

64.   Defendants were at all times fully aware of the obligation to protect the Private Information of customers. Defendants were also aware of the significant repercussions that would result from their failure to do so.

**C. Plaintiffs and the Class Have Suffered Injury as a Result of Defendants' Data Mismanagement**

65.   As a result of Defendants' failure to implement and follow even the most basic security procedures, Plaintiffs and Class Members' Private Information has been and are now in the hands of an unauthorized third-party which may include thieves, unknown criminals, banks, credit companies, and other potentially hostile individuals. Plaintiffs and Class Members now face an increased risk of identity theft and will consequentially have to spend, and will continue to spend, significant time and money to protect themselves due to the Data Breach.

66.   Plaintiffs and Class Members have had their most personal and sensitive Private Information disseminated to the public at large and have experienced and will continue to experience emotional pain and mental anguish and embarrassment.

67.   Plaintiffs and Class Members face an increased risk of identity theft, phishing attacks, and related cybercrimes because of the Data Breach. Those impacted are under heightened and prolonged anxiety and fear, as they will be at risk of falling victim for cybercrimes for years to come.

68.   As a result of Private Information's real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated, and become more valuable to thieves and more damaging to victims.

69.   Personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[19] Experian reports that a stolen credit or

---

[19] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs*, DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs//.

CLASS ACTION COMPLAINT

debit card number can sell for $5 to $110 on the dark web. Criminals can also purchase access to entire company data breaches from $900 to $4,500.[20]

70.     Consumers place a high value on the privacy of that data. Researchers shed light on how many consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[21]

71.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Private Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

72.     Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals... because they often have lesser IT defenses and a high incentive to regain access to their data quickly.[22]

73.     Plaintiffs and members of the Class must immediately devote time, energy, and money to: 1) closely monitor their bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and

---

[20] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.
[21] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), accessible at  https://www.jstor.org/stable/23015560?seq=1
(Last accessed May 2, 2024).
[22] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), accessible at https://www.law360.com/articles/1220974 (Last accessed May 2, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

74. Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiffs and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, because of Defendants' conduct. Further, the value of Plaintiffs' and Class Members' Private Information has been diminished by its exposure in the Data Breach.

75. As a result of Defendants' failures, Plaintiffs and Class Members are at substantial risk of suffering identity theft and fraud or misuse of their Private Information.

76. Plaintiffs and members of the Class suffered actual injury from having Private Information compromised as a result of Defendants' negligent data management and resulting Data Breach including, but not limited to (a) damage to and diminution in the value of their Private Information, a form of property that Defendants obtained from Plaintiffs; (b) violation of their privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

77. For the reasons mentioned above, Defendants' conduct, which allowed the Data Breach to occur, caused Plaintiffs and Class Members significant injuries and harm.

78. Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard Private Information.

79. Plaintiffs, individually and on behalf of all other similarly situated individuals, allege claims in negligence, negligence per se, breach of implied contract, unjust enrichment, violations of the California Consumer Privacy Act, California Legal Remedies Act, and California's Unfair Competition Law.

## CLASS ACTION ALLEGATIONS

80.    Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated ("**the Class**").

81.    Plaintiffs propose the following Class and Subclass definitions, subject to amendment(s) as appropriate:

**Nationwide Class**

> All individuals residing in the United States whose Private Information was compromised as a result of the Data Breach. ("**the Class**").

**California Subclass**

> All individuals identified by Defendants (or their agents or affiliates) as being those persons residing in California impacted by the Data Breach. (the "**California Subclass**").

82.    Collectively, the Class and California Subclass are referred to as the Classes.

83.    Excluded from the Classes are Defendants' officers and directors, and any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

84.    Plaintiffs reserve the right to amend or modify the Class or Subclass definitions as this case progresses.

85.    **Numerosity:** Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable.

86.    **Predominance of Common Questions**. There exist questions of law and fact common to the Class, which predominate over any questions affecting individual Class Members. These common questions of law and fact include, without limitation:

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

a.  Whether Defendants unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' Private Information;

b.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.  Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.  Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

e.  Whether Defendants owed a duty to Class Members to safeguard their Private Information;

f.  Whether Defendants were subject to (and breached) the FTC Act, the California Confidentiality of Medical Information Act and/or the CCPA;

g.  Whether Defendants breached their duty to Class Members to safeguard their Private Information

h.  Whether computer hackers obtained Class Members' Private Information in the Data Breach;

i.  Whether Defendants knew or should have known that its data security systems and monitoring processes were deficient;

j.  Whether Defendants' conduct was negligent;

k.  Whether Defendants' acts breached an implied contract they formed with Plaintiffs and the Class Members;

l.  Whether Defendants were unjustly enriched to the detriment of Plaintiffs and the Class;

m. Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050   F: (213) 788-4070 | clarksonlawfirm.com

87.  **Typicality:** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach.

88.  **Adequacy:** Plaintiffs are adequate representatives for the Class because their interests do not conflict with the interests of the Class that they seek to represent. Plaintiffs have retained counsel competent and highly experienced in complex class action litigation counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their experienced counsel.

89.  **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Defendants. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based upon, inter alia, the records (including databases, e-mails, dealership records and files, etc.) Defendants maintain regarding their consumers.

90.  Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

CLASS ACTION COMPLAINT

**CALIFORNIA LAW SHOULD BE APPLIED TO THE NATIONWIDE CLASS**

91.     The State of California has a significant interest in regulating the conduct of businesses operating within its borders. California seeks to protect the rights and interests of all California residents and citizens of the United States against a company headquartered and doing business in California. California has a greater interest in the nationwide claims of Plaintiffs and members of the Class than any other state and is most intimately concerned with the claims and outcome of this litigation. *See Ehret v. Uber Techs., Inc.*, 68 F.Supp.3d 1121, 1130 (N.D. Cal. 2014) (noting courts including the California Supreme Court have permitted the application of California law in cases where alleged misrepresentations were "disseminated from California"); *In re Toyota Motor Corp.*, 785 F.Supp.2d 883, 917 (C.D. Cal. 2011) (To determine whether California law should apply, "courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which advertising and other promotional literature decisions were made.").

92.     Defendants are located in California and conduct substantial business in California, such that California has an interest in regulating Defendants' conduct under its laws. The corporate headquarters of each Defendant are in California which is the "nerve center" of its business activities – the place where its officers direct, control, and coordinate the company's activities, including its data security functions and policy, financial, and legal decisions. Further, upon information and belief, all managerial decisions stem from California, where decisions regarding security of the data were made. The flawed cybersecurity measures that led to the Data Breach were developed and managed from California. All of Defendants' contracts and agreements pertaining to the data security services and protocols in question are executed in California.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

93.     Each Defendant's decision to conduct substantial business in California and avail itself of California's laws, renders the application of California law to the claims herein constitutionally permissible.

## CLAIMS FOR RELIEF

## COUNT 1

## NEGLIGENCE

### *(On Behalf of Plaintiffs and the Nationwide Class)*

94.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

95.     Defendants owed a duty to Plaintiffs and all other Class Members to exercise reasonable care in safeguarding and protecting their Private Information in its possession, custody, or control.

96.     Defendants knew, or should have known, the risks of collecting and storing Plaintiffs' and all other Class Members' Private Information and the importance of maintaining secure systems. Defendants knew, or should have known, of the vast uptick in data breaches in recent years. Defendants had a duty to protect the Private Information of Plaintiffs and Class Members.

97.     Given the nature of Defendants' business, the sensitivity and value of the Private Information it maintains, and the resources at its disposal, Defendants should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring, which Defendants had a duty to prevent.

98.     Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Private Information entrusted to it—including Plaintiffs' and Class Members' Private Information.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

99.   It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class Members' Private Information to unauthorized individuals.

100. But for Defendants' negligent conduct or breach of the above-described duties owed to Plaintiffs and the Class Members, their Private Information would not have been compromised.

101. As a result of Defendants' above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs and all other Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Private Information; (iii) breach of the confidentiality of their Private Information; (iv) deprivation of the value of their Private Information, for which there is a well- established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) actual or attempted fraud.

///
///
///
///
///
///

## COUNT II

## NEGLIGENCE PER SE

### *(On Behalf of Plaintiffs and the Nationwide Class)*

102. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

103. Defendants' duties arise from Section 5 of the FTC Act ("**FTCA**"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as Defendants, of failing to employ reasonable measures to protect and secure Private Information.

104. Defendants violated Security Rules and Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiffs' and all other Class Members' Private Information and not complying with applicable industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information it obtains and stores, and the foreseeable consequences of a data breach involving Private Information including, specifically, the substantial damages that would result to Plaintiffs and the other Class Members.

105. Defendants' violations of Security Rules and Section 5 of the FTCA constitute negligence per se.

106. Plaintiffs and Class Members are within the class of persons that Security Rules and Section 5 of the FTCA were intended to protect.

107. The harm occurring because of the Data Breach is the type of harm Security Rules and Section 5 of the FTCA were intended to guard against.

108. It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure,

CLASS ACTION COMPLAINT

and dissemination of Plaintiffs' and Class Members' Private Information to unauthorized individuals.

109.  The injury and harm that Plaintiffs and the other Class Members suffered was the direct and proximate result of Defendants' violations of Security Rules and Section 5 of the FTCA. Plaintiffs and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Private Information; (iii) breach of the confidentiality of their Private Information; (iv) deprivation of the value of their Private Information, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach; and (vi) actual or attempted fraud.

## COUNT III

## BREACH OF FIDUCIARY DUTY

### *(On Behalf of Plaintiffs and the Nationwide Class)*

110.  Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

111.  Plaintiffs and Class Members either directly or indirectly gave Defendants their Private Information in confidence, believing that Defendants would protect that information. Plaintiffs and Class Members would not have provided Defendants with this information had they known it would not be adequately protected. Defendants' acceptance and storage of Plaintiffs' and Class Members' Private Information created a fiduciary relationship between Defendants and Plaintiffs and Class Members. Considering this relationship, Defendants must act primarily for the benefit of their consumers, which includes safeguarding and protecting Plaintiffs' and Class Members' Private Information.

112.  Defendants have a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of their relationship. They breached that duty by failing to properly protect the integrity of the system containing Plaintiffs' and Class Members' Private Information, failing to safeguard the Private Information of Plaintiffs and Class Members it collected.

113.  As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and Class Members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their Private Information which remains in Defendants' possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the Private Information compromised as a result of the Data Breach; and (vii) actual or attempted fraud.

## <u>COUNT IV</u>

### UNJUST ENRICHMENT

#### *(On Behalf of Plaintiffs and the Nationwide Class)*

114.  Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein. This claim is pleaded in the alternative to the implied contract claim pursuant to Fed. R. Civ. P. 8(d).

115.  Plaintiffs and Class Members conferred a monetary benefit upon Defendants in the form of monies paid for services.

116. Defendants accepted or had knowledge of the benefits conferred upon it by Plaintiffs and Class Members. Defendants also benefitted from the receipt of Plaintiffs' and Class Members' Private Information.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

117. As a result of Defendants' conduct, Plaintiffs and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiffs and Class Members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

118. Defendants should not be permitted to retain the money belonging to Plaintiffs and Class Members because Defendants failed to adequately implement the data privacy and security procedures for themselves that Plaintiffs and Class Members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

119. Defendants should be compelled to provide for the benefit of Plaintiffs and Class Members all unlawful proceeds received by it because of the conduct and Data Breach alleged herein.

## COUNT V
## BREACH OF IMPLIED CONTRACT
### *(On Behalf of Plaintiffs and the Nationwide Class)*

120. Plaintiffs reallege and incorporate by reference all allegations of the preceding factual allegations as though fully set forth herein.

121. Defendants required Plaintiffs and Class Members to provide or authorize the transfer of their Private Information for Defendants to provide services. In exchange, Defendants entered implied contracts with Plaintiffs and Class Members in which Defendants agreed to comply with its statutory and common law duties to protect Plaintiffs' and Class Members' Private Information and to timely notify them in the event of a data breach.

122. Plaintiffs and Class Members would not have provided their Private Information to Defendants had they known that Defendants would not safeguard their Private Information, as promised, or provide timely notice of a data breach.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

123. Plaintiffs and Class Members fully performed their obligations under their implied contracts with Defendants.

124. Defendants breached the implied contracts by failing to safeguard Plaintiffs' and Class Members' Private Information and by failing to provide them with timely and accurate notice of the Data Breach.

125. The losses and damages Plaintiffs and Class Members sustained (as described above) were the direct and proximate result of Defendants' breach of its implied contracts with Plaintiffs and Class Members.

<u>**COUNT VI**</u>

**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT OF 2018**
**Cal. Civ. Code §§ 1798.100 et seq. ("CCPA")**
***(On Behalf of the California Subclass)***

126. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

127. As more personal information about consumers is collected by businesses, consumers' ability to properly protect and safeguard their privacy has decreased. Consumers entrust businesses with their personal information on the understanding that businesses will adequately protect it from unauthorized access.

128. As a result, in 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on certain businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected.

129. Defendants are subject to the CCPA and failed to implement such procedures which resulted in the Data Breach.

130. Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure because of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

131. Plaintiffs are "consumers" as defined by Civ. Code § 1798.140(g) because they are natural persons residing in the state of California.

132. Defendants are a "business" as defined by Civ. Code § 1798.140(c).

133. The CCPA provides that "personal information" includes "[a]n individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted . . . (iii) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account." See Civ. Code § 1798.150(a)(1); Civ. Code § 1798.81.5(d)(1)(A).

134. Plaintiffs' Private Information compromised in the Data Breach constitutes "personal information" within the meaning of the CCPA.

135. Through the Data Breach, Plaintiffs' private information was accessed without authorization, exfiltrated, and stolen by criminals in a nonencrypted and/or nonredacted format.

136. The Data Breach occurred because of Defendants' failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

137. Simultaneously herewith, Plaintiffs are providing notice to Defendants pursuant to Cal. Civ. Code § 1798.150(b)(1), identifying the specific provisions of the

CCPA. Plaintiffs allege Defendants have violated or are violating. Although a cure is not possible under the circumstances, if (as expected) Defendants are unable to cure or do not cure the violation within 30 days, Plaintiffs will amend this Complaint to pursue actual or statutory damages as permitted by Cal. Civ. Code § 1798.150(a)(1)(A).

138.  As a result of Defendants' failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiffs seek statutory damages of up to $750 per class member (and no less than $100 per class member), actual damages to the extent they exceed statutory damages, injunctive and declaratory relief, and any other relief as deemed appropriate by the Court.

## COUNT VII
### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### Cal. Civ. Code §§ 1750 et seq. ("CLRA")
### *(On Behalf of the California Subclass)*

139.  Plaintiffs reallege and incorporate by reference every allegation contained elsewhere in this Complaint as if fully set forth herein.

140.  This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "**CLRA**"), California Civil Code § 1750, et seq. This cause of action does not seek monetary damages currently and is limited solely to injunctive relief. Plaintiffs will later amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice required by California Civil Code § 1782.

141.  Plaintiffs and Class Members are "consumers," as the term is defined by California Civil Code § 1761(d).

142.  Plaintiffs, Class Members and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

143.  The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct undertaken by Defendants was likely to deceive consumers.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

144. Cal. Civ. Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

145. Defendants violated this provision by representing that Defendants took appropriate measures to protect Plaintiffs' and the Class Members' Private Information Additionally, Defendants improperly handled, stored, or protected either unencrypted or partially encrypted data.

146. As a result, Plaintiffs and the Class Members were induced to provide their Private Information to Defendants.

147. As a result of engaging in such conduct, Defendants have violated Civil Code § 1770.

148. Pursuant to Civil Code § 1780(a)(2) and (a)(5), Plaintiffs seek an order of this Court that includes, but is not limited to, an order enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

149. Plaintiffs and the Class Members suffered injuries caused by Defendants' misrepresentations, because they provided their Private Information believing that Defendants would adequately protect this information.

150. Plaintiffs and Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

151. The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiffs and members of the Class.

///

///

///

///

///

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

**COUNT VIII**

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW Cal. Bus. and Prof. Code §§ 17200, et seq. ("UCL")**

***(On Behalf of the California Subclass)***

152. Plaintiffs re-allege and incorporate by reference all preceding factual allegations as though fully set forth herein.

153. Plaintiffs bring this claim on behalf of themselves and the California Class.

154. The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq. ("**UCL**"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

155. By reason of Defendants' above-described wrongful actions, inaction, and omission, the resulting Data Breach, and the unauthorized disclosure of Plaintiffs' and Class Members' Private Information, Defendants engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

156. Defendants' business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, in that the private and confidential Private Information of consumers has been compromised for all to see, use, or otherwise exploit.

157. Defendants' practices were unlawful and in violation of the CCPA and CLRA and Defendants' own privacy policy because Defendants failed to take reasonable measures to protect Plaintiffs' and Class Members' Private Information.

158. Defendants' business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the Private Information they provide to Defendants will remain private and secure, when in fact it was not private and secure.

159. Plaintiffs and Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendants' above-

described wrongful actions, inaction, and omissions including, inter alia, the unauthorized release and disclosure of their Private Information.

160. Defendants' above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiffs' and Class Members' Private Information also constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200 et seq., in that Defendants' conduct was substantially injurious to Plaintiffs and Class Members, offensive to public policy, immoral, unethical, oppressive, and unscrupulous, and the gravity of Defendants' conduct outweighs any alleged benefits attributable to such conduct.

161. But for Defendants' misrepresentations and omissions, Plaintiffs and Class Members would not have provided their Private Information to Defendants or would have insisted that their Private Information be more securely protected.

162. As a direct and proximate result of Defendants' above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiffs and Class Members' Private Information, they have been injured as follows: (1) the loss of the opportunity to control how their Private Information is used; (2) the diminution in the value and/or use of their Private Information entrusted to Defendants; (3) the increased, imminent risk of fraud and identity theft; (4) the compromise, publication, and/or theft of their Private Information; and (5) costs associated with monitoring their Private Information, amongst other things.

163. Plaintiffs take upon themselves enforcement of the laws violated by Defendants in connection with the reckless and negligent disclosure of Private Information. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiffs by forcing them to pay attorneys' fees and costs from the recovery in this action. Therefore, an award of attorneys' fees and costs is appropriate under California Code of Civil Procedure § 1021.5.

///

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, pray for judgment as follows:

  a. For an Order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the Class;

  b. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Private Information;

  c. For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

  d. For an order requiring Defendants to pay for credit monitoring services for Plaintiffs and the Class of a duration to be determined at trial;

  e. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

  f. For an award of punitive damages, as allowable by law;

  g. For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

  h. Pre- and post-judgment interest on any amounts awarded; and

  i. Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

Dated: May 29, 2024

**CLARKSON LAW FIRM, P.C.**

*/s/ Yana Hart*
Ryan J. Clarkson, Esq.
Yana Hart, Esq.
Tiara Avaness, Esq.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
rclarkson@clarksonlawfirm.com
yhart@clarksonlawfirm.com
tavaness@clarksonlawfirm.com

*Attorneys for Plaintiffs and the Proposed Classes*